SQUIRE PATTON BOGGS (US) LLP
Nava Hazan
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
Telephone: (212) 872-9800
Facsimile: (212) 872-9815
Email: nava.hazan@squirepb.com

*Counsel for the Petitioners, Russell Crumpler of KPMG (BVI) Limited and Kris Beighton
of KPMG in the Cayman Islands, in their Capacity as Joint Liquidators and Foreign
Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 15** |
| | ) | |
| **KEYSTONE PRIVATE EQUITY** | ) | **Case No. 18-_____ (___)** |
| **INVESTMENTS LIMITED (in Liquidation)**[1] | ) | |
| | ) | |
| | ) | |
| **Debtor in a Foreign Proceeding.** | ) | |
| | ) | |

**VERIFIED PETITION FOR RECOGNITION OF A FOREIGN**
**MAIN PROCEEDING AND CHAPTER 15 RELIEF PURSUANT TO**
**SECTIONS 1504, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE**

Russell Crumpler of KPMG (BVI) Limited and Kris Beighton of KPMG in the Cayman

Islands, in their capacity as joint liquidators (the "Liquidators") and as foreign representatives

(the "Foreign Representatives") of Keystone Private Equity Investments Limited (in Liquidation)

(the "Debtor") in a foreign proceeding under the British Virgin Island Insolvency Act, 2003 (as

amended) pending before the Eastern Caribbean Supreme Court in the High Court of Justice,

Virgin Islands, Commercial Division (the "BVI Court") where the Debtor is being liquidated (the

"BVI Proceeding"), respectfully submit this verified petition (the "Chapter 15 Petition") pursuant

---

[1] Keystone Private Equity Investments Limited (in Liquidation)'s service address is: KPMG (BVI) Limited, 3rd
Floor, Banco Popular Building, P.O. Box 4467, Road Town, Tortola, British Virgin Islands, VG 1110, Attn: Russell
Crumpler.

to Sections 1504, 1515, 1517, 1520 and 1521 of Title 11 of the United States Code (the "Bankruptcy Code") seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Recognition Order") granting recognition of the BVI Proceeding as a foreign main proceeding pursuant to Sections 1515, 1517 and 1520 of the Bankruptcy Code, approving the transfer of the Debtor's funds currently located in the United States, specifically in the Merrill Lynch Account, as defined below, to the Debtor's bank accounts which are under the control of the Liquidators (the "Bank Accounts") to be used by the Liquidators for the administration of, and distribution in, the BVI Proceeding, and granting such other and further relief as the United States Bankruptcy Court for the Southern District of New York (the "Court") deems just and proper.[2]

In support of this Chapter 15 Petition, the Foreign Representatives rely upon the *Declaration of Russell Crumpler in Support of Chapter 15 Petition for Recognition of Foreign Main Proceeding and Chapter 15 Relief Pursuant to Sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "Crumpler Declaration")[3] filed contemporaneously herewith and incorporated herein in its entirety, and respectfully state as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this Chapter 15 Petition pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

2. This case was properly commenced pursuant to 11 U.S.C. § 1504 by the filing of a petition for recognition of the BVI Proceeding under 11 U.S.C. § 1515.

---

[2] To the extent this Court does not recognize the BVI Proceeding as a "foreign main proceeding" with respect to the Debtor, the Foreign Representatives hereby seek to obtain recognition of the BVI Proceeding as a "foreign non-main proceeding" with respect to the Debtor entity pursuant to sections 1515, 1517 and 1521 of the Bankruptcy Code. In addition, the Foreign Representatives reserve the right to request further relief pursuant to section 1521 of the Bankruptcy Code prior to or at the hearing on the Chapter 15 Petition.
[3] All terms not otherwise defined herein shall have the meaning ascribed to them in the Crumpler Declaration.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1410.

4.      The statutory bases for the relief requested herein are Sections 1504, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## Background

5.      The Foreign Representatives file this Chapter 15 Petition seeking recognition of the BVI Proceeding as a "foreign main proceeding" under Sections 1515 and 1517 of the Bankruptcy Code.  The Foreign Representatives need the Court to grant a stay of all proceedings against the Debtor and its assets, including the Debtor's assets located in the United States, and to allow the Liquidators to obtain cooperation in the United States from third party banks and other parties-in-interest to permit the transfer of funds currently located in the United States to the Debtor's Bank Accounts.  Specifically, the Liquidators seek the Court's approval of the transfer of funds currently located in the primary account number 278-02231 at Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") in the amount of $581,161.90 as of August 31, 2018 (the "Merrill Lynch Account").  The Foreign Representatives request this relief to facilitate the Debtor's cross-border liquidation by protecting the Debtor from the commencement or continuation of actions in the United States, whether against its United States assets or otherwise, and to assist the Liquidators in obtaining cooperation in the United States from parties-in-interest with the goal of entrusting the administration, realization and distribution of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representatives, including the transfer of the Debtor's funds currently held in the United States in the Merrill Lynch Account, for the ultimate purpose of distribution of such funds to the Debtor's investors in the BVI Proceeding.

6.      Congress enacted Chapter 15 to ensure that a United States bankruptcy court can recognize and enforce actions and orders of a foreign court in a restructuring or liquidation

proceeding undertaken in a jurisdiction where the debtor has its "center of main interest" or an "establishment." Chapter 15 provides for both the granting of relief during the pendency of the foreign proceeding, such as the application of Section 362 of the Bankruptcy Code to United States assets, and recognition and enforcement in the United States of any orders entered in the foreign proceeding.

7.    Here, although the Debtor's assets are primarily located in the British Virgin Islands (the "BVI"), the Debtor has assets in the United States in various bank accounts located in the United States and some of its underlying investments are located in the United States. Various parties may seek a tactical advantage through unilateral action, including acceleration of efforts to commence or continue litigation, attachment or other legal process in whatever United States jurisdiction they choose.  In addition, parties in interest may seek through litigation in the United States to avoid participation in the BVI Proceeding, the success of which depends on the ability to adopt a unified plan covering the claims of all creditors and shareholders.

8.    Any attempt to exercise control, transfer, distribute, or otherwise liquidate the Debtor's assets in the United States will decrease the assets available to the Liquidators as they attempt to fairly distribute such assets in the BVI Proceeding.  Rather, any such disposition should be done in accordance with Chapter 15 of the Bankruptcy Code by the Liquidators whose duty it is to oversee a distribution of assets that will benefit all of the Debtor's creditors and shareholders. Absent recognition of the BVI Proceeding, the Liquidators' ability to ensure a fair distribution for all creditors and shareholders will be significantly harmed, and the stated purposes of Chapter 15 will be frustrated.

9.    The Liquidators have been in discussion with Merrill Lynch for several months regarding the transfer of the funds in the Merrill Lynch Account.  Merrill Lynch has confirmed

that it will support the filing of the Chapter 15 case and will cooperate with the Liquidators to permit the transfer of the funds to the Liquidators after the Court enters the recognition order.

### A.   RECOGNITION OF THE BVI PROCEEDING AS A FOREIGN MAIN PROCEEDING

#### Basis for Relief

10.     The Debtor's Chapter 15 Petition meets the standard for recognition under the Bankruptcy Code. There is no question that (a) the Liquidators are "foreign representatives" as that term is used in Section 1517 of the Bankruptcy Code, (b) the Debtor is a company organized under the laws of the BVI, whose center of main interests lies in the BVI, (c) the BVI Proceeding is a "foreign proceeding," and (d) the Chapter 15 Petition otherwise meets the objective criteria for recognition. In fact, this Chapter 15 case (the "Chapter 15 Case") exemplifies the type of relief Congress wanted to make available: the ability to effectively liquidate (or reorganize) across international borders to maximize the value of the assets for the benefit of stakeholders in multiple jurisdictions.

11.     Chapter 15 of the Bankruptcy Code states that, unless manifestly contrary to the public policy of the United States, a court shall enter an order recognizing a foreign proceeding if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a).

12.     Chapter 15 of the Bankruptcy Code provides a simple, objective standard for recognition of a foreign insolvency proceeding. A court's decision whether to grant recognition

does not depend on any findings about the nature of the foreign proceeding itself. All that the Bankruptcy Code requires is compliance with the statutory elements. See H.R. REP. 109-31(1), 109th Cong., Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 169 at 175 ("the decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304 of the Bankruptcy Code. The requirements of this section, which incorporate the definitions in section 1502 and sections 101(23) and 101(24), are all that must be fulfilled to attain recognition.").

## I.    The BVI Proceeding is a "Foreign Proceeding"

13.    The Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). The BVI Proceeding represents a statutory means of comprehensively liquidating the Debtor's assets under the supervision of the BVI Court. The BVI Proceeding is a "foreign proceeding" as it constitutes a collective judicial proceeding under the laws of the BVI, which laws relate to insolvency, in which the assets of the Debtor are subject to control or supervision by the BVI Court for the purpose of liquidating such assets. Accordingly, the Chapter 15 Case involves a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code.

## II.    The Liquidators are "Foreign Representatives"

14.    The Bankruptcy Code defines a "foreign representative," in pertinent part, as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Foreign Representatives satisfy the requirements of

Section 101(24) of the Bankruptcy Code because, pursuant the BVI Court's order dated April 28, 2014 (the "April 28 Order"), the BVI Court appointed the Liquidators to administer the liquidation of the Debtor's assets.

### III.   The Chapter 15 Case Was Properly Commenced

15.     The Foreign Representatives duly and properly initiated the Chapter 15 Case. Section 1504 of the Bankruptcy Code provides that the filing of a petition for recognition of a foreign proceeding commences a Chapter 15 case.   11 U.S.C. § 1504.   The Foreign Representatives filed the Chapter 15 Petition and proper supporting documents, thereby commencing the Chapter 15 Case.

16.     Section 1515 of the Bankruptcy Code sets forth the process by which a foreign representative applies for recognition.  It provides, in relevant part, that:

> (a)   A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.
>
> (b)  A petition for recognition shall be accompanied by –
>
>> (1)   a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative . . .

11 U.S.C. § 1515.

17.     As set forth above, the BVI Court authorized the Foreign Representatives to liquidate the Debtor in the BVI Proceeding.  In addition, along with the Chapter 15 Petition, the Foreign Representatives submitted a true and exact copy of the April 28 Order evidencing their appointment and the commencement of the BVI Proceeding.  Finally, by order of the BVI Court dated July 28, 2018, the Liquidators were specifically authorized to file the Chapter 15 Petition.

18.     The Foreign Representatives also submitted to the Court a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives,

as required by Section 1515(c) of the Bankruptcy Code.[4]  Additionally, the materials submitted by the Foreign Representatives otherwise comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules"). Accordingly, the Chapter 15 Petition satisfies the requirements of Section 1515(b) of the Bankruptcy Code.

19.     In Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238 (2d Cir. 2013), the United States Court of Appeals for the Second Circuit held that foreign entities seeking recognition under Chapter 15 of the Bankruptcy Code must, in addition to satisfying the requirements for recognition set forth in Chapter 15, have a residence, domicile, place of business or assets in the United States pursuant to section 109(a) of the Bankruptcy Code.  Courts have held that claims and causes of action or an undrawn retainer for legal services are deemed "property" sufficient to satisfy the requirements of section 109 of the Bankruptcy Code.  See In re Octaviar Administration Pty Ltd, 511 B.R. 361 (Bankr. S.D.N.Y. 2014); see also In re Suntech Power Holdings Co., 520 B.R. 399 (Bankr. S.D.N.Y. 2014) (funds held in escrow in an account which were not in the debtor's name are sufficient to satisfy section 109 of the Bankruptcy Code); In re Berau Capital Resources Pte Ltd., 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) ("The Court is satisfied that the retainer provides a sufficient basis for eligibility in this case"); In re United States Steel Can., No. 17-11519, 2017 Bankr. LEXIS 3041, at *20 (S.D.N.Y., July 31, 2017) ("Some courts, including this one, have held that an undrawn retainer in a United States bank account qualifies as property in satisfaction of section 109(a)").  As described in the Crumpler Declaration, the Debtor has the following assets in the United States:

---

[4] This statement is embodied in the Crumpler Declaration for purposes of Section 1515(c) of the Bankruptcy Code.

(i) the Merrill Lynch Account, (ii) some of its underlying investments, and (iii) an undrawn retainer in the amount of $10,000.00 for the services to be provided by the Foreign Representatives' United States' counsel on behalf of the Debtor.[5]

## IV.    The BVI Proceeding Is a "Foreign Main Proceeding"

20.    The Court should recognize the BVI Proceeding as a "foreign main proceeding," as defined in Section 1502(4) of the Bankruptcy Code.  A foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the "center of its main interests." 11 U.S.C. §§ 1502(4), 1517(b)(1).

21.    While the Bankruptcy Code does not define "center of main interests," it does provide that, in the absence of evidence to the contrary, the debtor's registered offices are presumed to be the debtor's center of main interests.  11 U.S.C. § 1516(c).  However, such presumption "is included for speed and convenience of proof where there is no serious controversy." See H.R. REP. No. 31, 109th Cong., 1st Sess. 1516 (2005).  "This presumption 'permits and encourages fast action in cases where speed may be essential, while leaving the debtor's true 'center' open to dispute in cases where the facts are more doubtful.'"  In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd (In Provision Liquidation), 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) (citing Jay Lawrence Westbrook, Locating the Eye of the Financial Storm, 32 Brook. J. Int'l L. 3, 15 (2007)).

22.    Although "[t]he Bankruptcy Code does not state the type of evidence required to rebut the presumption that the COMI is the debtor's place of registration or incorporation," courts have found that "[v]arious factors, singly or combined, could be relevant to such a determination," including: (a) the location of the debtor's headquarters; (b) the location of those

---

[5] This amount was wired by the Liquidators prior to the filing of the Chapter 15 Case to Squire Patton Boggs (US) LLP's account located at Citibank N.A., 153 East 53rd Street, New York, NY 10022 under the name of the Debtor.

who actually manage the debtor; (c) the location of the debtor's primary assets; (d) the location

of the majority of the debtor's creditors or of a majority of the creditors who would be affected

by the case; and (e) the jurisdiction whose laws would apply to most disputes.  In re SPhinX;

Ltd., 351 B.R 103, 117 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007); see also In

re Basis Yield Alpha Fund (Master), 381 B.R. 37, 47 (Bankr. S.D.N.Y. 2008); Bear Stearns, 374

B.R. at 128.

23.     Based on the foregoing, the BVI is the Debtor's center of main interests because,

among other things: (i) the Debtor is incorporated and registered in the BVI as the registered

office of the Debtor is located at Intertrust Corporate Services (BVI) Limited, 171 Main Street,

P.O. Box 4041, Road Town, Tortola, British Virgin Islands, VG 1110; (ii) the Debtor's principal

assets are located in the BVI where the Liquidators maintain such assets;[6] (iii) one of the

Liquidators (who are in control of the Debtor) is located in the BVI, has been managing the

Debtor's affairs for more than four (4) years, and has performed all the work related to the

liquidation in the BVI;[7] and (iv) the liquidation proceedings and most disputes related thereto

are, in all likelihood, be subject to BVI law.  In addition, (i) the Debtor has no management; (ii)

the Liquidators have taken possession of the Debtor's books and records in the BVI and such

books and records are now under their control; (iii) the Liquidators have frozen and, thereafter,

taken control of the Debtor's bank accounts in Bermuda and the Cayman Islands and continue to

---

[6] While the underlying investments are located in different jurisdictions, including in the BVI and the United States, the ownership of the investments lies in the BVI under BVI law.

[7] For a liquidator to act under the British Virgin Island Insolvency Act, 2003 (as amended), the liquidator must be appointed by a BVI court.  A BVI license from the BVI Financial Services Commission must be obtained by the liquidator and the liquidator must be a resident of the BVI.  Additional insolvency professionals located outside of the BVI, such as Kris Beighton in this case, may be appointed with the BVI insolvency professional, if they have demonstrated to the BVI Financial Services Commission that, based on their experience and skills, they will bring additional value to the liquidation process.  Any insolvency professionals located outside of the BVI must obtain the authorization of the BVI Financial Services Commission to be appointed as described above.

operate these accounts with sole signatory rights; (iv) the Liquidators have informed each of the Debtor's investment contacts of their appointment and have liaised with such contacts to ensure that the Liquidators have a clear understanding of the assets of the Debtor and can develop an appropriate strategy for the realization of such assets; and (v) the Liquidators have ensured that Class C shareholders and the underlying beneficial owners of the Debtor are kept properly informed as to the progress of the liquidation.  Accordingly, the BVI Proceeding is pending in the center of the Debtor's main interests and constitutes a "foreign main proceeding" under Section 1502(4) of the Bankruptcy Code.

24.     Since the Liquidators' appointment in 2014, the Liquidators have also litigated a number of large claims before the BVI Court, including with respect to the adjudication and settlement of Rainer Busch's claim, the Debtor's former investment manager.

25.     Courts have recognized that where a debtor's activities have been conducted only in connection with winding up its business for an extended period of time, the activities of a debtor's liquidators are important to the "center of main interests" determination.  In re Fairfield Sentry Ltd., 714 F.3d 127 (2d Cir. 2013) (recognizing liquidation proceedings in the BVI as "foreign main proceeding" when the BVI liquidators were appointed seven months prior to the Chapter 15 petition and conducted all the debtor's business since that time); In re British Am. Ins. Co., Ltd., 425 B.R. 884, 914 (Bankr. S.D. Fla. 2010) ("There may be instances where a foreign representative remains in place for an extended period, and relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing creditors and other parties to look to the judicial manager as the location of the debtor's business. This could lead to the conclusion that the center of its main interest has become lodged with the foreign representative"); In re British Am. Isle of Venice (BVI), Ltd., 441 B.R. 713, 722 (Bankr.

S.D. Fla. 2010) (holding that a debtor's liquidation proceeding in the BVI was a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code); In re Betcorp Ltd., 400 B.R. 266, 292-93 (Bankr. D. Nev. 2009) (holding that a debtor's center of main interests was in the place where the liquidation was pending).

26.     Courts in this and other circuits have also held that the relevant time for determining a debtor's center of main interests is at the time the petition for recognition is filed. See In re Fairfield Sentry Ltd., 714 F.3d 127 (2d Cir. 2013), Lavie v. Ran (In re Ran), 607 F.3d 1017 (5th Cir. 2010) (where an individual debtor had relocated from Israel nearly ten years prior to the filing of a Chapter 15 petition by an Israeli bankruptcy receiver, maintained his finances and business exclusively in the United States, had established employment and a residence in Texas, was a permanent legal resident of the United States, and had neither a secondary residence nor place of employment in Israel, the court held that the debtor neither had a place of operations nor conducted non-transitory economic activity in Israel, and thus the bankruptcy receiver could not demonstrate that there was an "establishment" in Israel since, as of the date the Chapter 15 petition was filed, the individual debtor had relocated in the United States).

27.     Here, evidence in the record supports the determination that the center of main interest for the Debtor is the BVI, including that: (1) the Debtor is incorporated and maintains its registered office in the BVI; (2) upon their appointment (more than 4 years prior to the filing of this Chapter 15 Case), the Liquidators sent notice of their appointment to all parties-in-interest, published notice of their appointment in three different publications and invited creditors to submit claims in the liquidation of the Debtor; (3) the Liquidators sent Net Value Asset Reports on a regular basis to the Class C shareholders and the underlying beneficial owners of the Debtor to update them on the status of the liquidation; (4) the Liquidators informed each of the Debtor's

investment contacts of their appointment and have, thereafter, liaised with such contacts to monitor and, when appropriate, realize each investment; (5) the Liquidators have BVI-resident employees and offices, and have recovered the Debtor's books and records; and (6) the Liquidators have been directing and coordinating the Debtor's affairs for more than 4 years. Because the BVI Proceeding takes place in the BVI and, for more than 4 years prior to such proceeding leading up to the Chapter 15 Petition, the Liquidators have been directing and coordinating the Debtor's affairs, the expectations of third parties would be that the Debtor's center of main interest is the BVI.

## V.    Recognition of the BVI Proceeding Is Consistent With Public Policy

28.    Finally, recognizing the BVI Proceeding would not be manifestly contrary to the public policy of the United States.  See 11 U.S.C. § 1506 (court may refuse to recognize a foreign proceeding "if the action would be *manifestly* contrary to the public policy of the United States) (emphasis added).[8]   Indeed, granting such recognition embodies United States public policy regarding foreign proceedings.  This public policy is articulated through the objectives of Sections 1501(a) and 1508 of the Bankruptcy Code.  These sections affirm the international origin of Chapter 15 of the Bankruptcy Code and provide effective mechanisms for dealing with cross-border insolvencies, including: (i) establishing cooperation between United States courts, trustees, examiners, debtors and debtors in possession, and the courts and other competent authorities of foreign countries; (ii) creating greater legal certainty for trade and investment; (iii) establishing fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested parties, including the debtor; (iv) protecting and

---

[8] As the legislative history explains, Section 1506 "has been narrowly interpreted on a consistent basis in courts around the world.  The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States."  H.R. Rep. 109-31(1), 109 Cong., 1st Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 172.

maximizing the value of the foreign debtor's assets; and (v) facilitating the rescue of the foreign

debtor's financially-troubled businesses (thereby protecting investments in the foreign debtor and

preserving the employment of the foreign debtor's employees).   11 U.S.C. §§ 1501(a), 1508.

The Court's recognition of the BVI Proceeding and the granting of the requested relief would

promote the policy behind Chapter 15 of the Bankruptcy Code by providing precisely the

assistance the Debtor needs here -- an effective cross-border liquidation of its business.  See 11

U.S.C. § 1501(a).

29.     Moreover, the insolvency laws of the BVI provide stakeholders similar due

process rights and comparable protections as are available under the laws of the United States

and, hence, are not manifestly contrary to the public policy of the United States.

## B.     TRANSFER OF THE FUNDS IN THE MERRILL LYNCH ACCOUNT TO THE LIQUIDATORS

### Basis for Relief

30.     Section 1521(a) of the Bankruptcy Code provides that "[u]pon recognition of a

foreign proceeding . . . where necessary to effectuate the purpose of this chapter and to protect

the assets of the debtor or the interests of the creditors, the court may, at the request of the

foreign representative, grant any appropriate relief, including . . . entrusting the administration or

realization of all or part of the debtor's assets within the territorial jurisdiction of the United

States to the foreign representative …" 11 U.S.C. § 1521(a)(5).  Relief under section 1521 may

only be granted "if the interests of the creditors and other interested entities, including the debtor,

are sufficiently protected." 11 U.S.C. § 1522(a).

31.     Section 1521(b) of the Bankruptcy Code also provides that "[u]pon recognition

of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign

representative, entrust the distribution of all or part of the debtor's assets located in the United

- 14 -

States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b).

32.     Section 1521(a)(7) of the Bankruptcy Code further provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including … granting any additional relief that may be available to a trustee."  11 U.S.C. § 1521(a)(7).

33.     Finally, Section 1507 of the Bankruptcy Code provides that "[s]ubject to the specific limitations stated elsewhere in [chapter 15 of the Bankruptcy Code] the court, if recognition is granted, may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a).

34.     Courts have found that Chapter 15 provides for a "broad range of relief" and that section 1521 enables them to entrust assets to the foreign representative.  See, e.g., In re Vitro S.A.B. de C.V., 701 F.3d 1031, 1044 (5th Cir. 2012) (recognizing that, at the request of the foreign representative, the court may entrust the United States assets to the foreign representative under section 1521); In re AJW Offshore, Ltd., 488 B.R. 551, 561 (Bankr. E.D.N.Y. 2013) (entrusting foreign representatives with administration and realization of debtor's United States assets); In re Atlas Shipping A/S, 404 B.R. 726, 739-42 (Bankr. S.D.N.Y. 2009) (vacating attachment on debtor's funds, entrusting the funds to foreign representatives under Section 1521(a)(5) and explaining that "[i]ncident to the task of administering and realizing assets of the debtor within the U.S. is the need to obtain affirmative control over such assets"); In re Tri-

- 15 -

<u>Continental Exch. Ltd.</u>, 349 B.R. 627, 629 (Bankr. E.D. Cal. 2006) (entrusting debtor's assets to foreign representatives and declining to impose restrictions on foreign representatives' administration of the debtors' assets, "because all creditors in this instance will be better served by, as contemplated by 11 U.S.C. § 1521(a)(5), entrusting administration and realization of assets to the foreign representatives without imposing a superfluous, and potentially inconsistent, tranche of judicial supervision").

I.     **Entrustment to the Foreign Representatives Is Necessary and Warranted Under 11 U.S.C. §§ 1521(a)(5) and 1521(b)**

35.     In accordance with the stated goals of Chapter 15, entrustment of the funds in the Merrill Lynch Account to the Liquidators is necessary in this case to (a) promote the "fair and efficient administration of cross-border insolvencies that protect the interests of all creditors, and other interested parties, including the debtor," and allow the Liquidators to use such funds for the administration, realization and distribution in the BVI Proceeding in a manner consistent with the Insolvency Act and any order from the BVI Court, and (b) promote and maximize the "value of the debtor's assets" by facilitating the transfer of the funds in the Merrill Lynch Account to allow for, among other things, a distribution to Class C shareholders. *See* 11 U.S.C. §§ 1501(a).  Here, an order entrusting the Debtor's United States assets, specifically the funds in the Merrill Lynch Account, to the Foreign Representatives is needed to enable the Liquidators to, among other things, complete their distribution to the Class C shareholders in the BVI Proceeding.

36.     The Liquidators contemplate that recoveries to Class C shareholders will be paid, in part, from funds currently located in the United States, specifically the funds in the Merrill Lynch Account.  Therefore, the Foreign Representatives request that the assets located within the territorial jurisdiction of the United States, specifically the funds in the Merrill Lynch

Account, be entrusted to them for the administration, realization and distribution in the BVI Proceeding in a manner consistent with the Insolvency Act and any order of the BVI Court.

37.     Here, entrusting the administration, realization and distribution of the Debtor's assets located within the territorial jurisdiction of the United States to the Foreign Representatives is critical because the funds located in the United States, specifically the funds in the Merrill Lynch Account, will be used, in part, to effectuate a distribution to the Class C shareholders.  The distribution of such assets to the Class C shareholders is predicated upon the transfer of such funds to the Foreign Representatives.

**II.     The Interests of All Creditors Are Sufficiently Protected**

38.     Pursuant to section 1522(a) of the Bankruptcy Code, relief under section 1521 may be granted "only if the interests of creditors and other interested entities, including the debtor, are sufficiently protected." See In re Tri-Continental Exch. Ltd., 349 B.R. at 637 ("Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another.").

39.     The transfer of funds located in the United States, specifically the funds in the Merrill Lynch Account, represents the only appropriate means for the Debtor's global pooling and, ultimately, distribution of assets, and maximizes value for all parties in interest, including the Class C shareholders, instead of allowing an ineffective and piecemeal liquidation of the Debtor's assets in different territories.  In the BVI Proceeding, all creditors were, and all Class C shareholders are, treated in a like manner, regardless of their location, for distribution purposes. Further, the process in the BVI Proceeding, underway for more than four (4) years, has afforded

creditors and shareholders significant rights and protections, including the ability to file their claims and obtain regular and appropriate information and updates from the Liquidators about the Debtor and its assets. While all the creditors have been paid in the BVI Proceeding, Class C shareholders still are awaiting additional distributions. As a result, all interested parties have been and continue to be sufficiently protected as required under section 1522(a) of the Bankruptcy Code.

40.     The Foreign Representatives submit that there is ample support to allow distribution and transfer of the funds in the Merrill Lynch Account to the Foreign Representatives pursuant to section 1521(b) of the Bankruptcy Code. The goal of this Chapter 15 case, the filing of which was approved by the BVI Court, is to allow the transfer of the funds in the Merrill Lynch Account to the Liquidators for ultimate distribution in the BVI Proceeding.

## Notice

41.     The Foreign Representatives have provided notice of the Chapter 15 Petition, pursuant to Bankruptcy Rule 2002(q) to: (a) the Office of the United States Trustee for the Southern District of New York; (b) all parties to litigations currently pending in the United States to which the Debtor is a party, if any; (c) counsel to Merrill Lynch, Pierce, Fenner & Smith Incorporated; (d) any known creditor and shareholder of the Debtor for whom the Foreign Representatives have an address; (e) the Debtor's administrator, former directors and former investment manager; and (f) any party-in-interest that becomes known to the Foreign Representatives by U.S. Mail within two (2) business days following the time any such party is identified by the Foreign Representatives. In light of the nature of the relief requested, the Foreign Representatives respectfully submit that no further notice is necessary. The Foreign Representatives believe that such notice and service is reasonable and proper under the circumstances and complied with Bankruptcy Rule 2002(q).

- 18 -

## **No Prior Request**

42.     No prior request for the relief sought herein has been made to this or any other

Court.

WHEREFORE, the Foreign Representatives respectfully request that the Court grant this Chapter 15 Petition and: (a) enter the Recognition Order in substantially the form attached hereto as Exhibit A; (b) approve the transfer of the Debtor's funds currently located in the United States in the Merrill Lynch Account to the Debtor's Bank Accounts to be used by the Liquidators for the administration of, and distribution in, the BVI Proceeding; and (c) grant any such other and further relief as the Court deems just and proper.

Dated:  October 25, 2018
        New York, New York

                                          Respectively submitted,

                                          SQUIRE PATTON BOGGS (US) LLP

                                          By: /s/ Nava Hazan
                                          Nava Hazan
                                          30 Rockefeller Plaza, 23rd Floor
                                          New York, NY 10112
                                          Telephone: (212) 872-9800
                                          Facsimile: (212) 872-9815
                                          Email: nava.hazan@squirepb.com

                                          *Counsel for the Petitioners, Russell
                                          Crumpler of KPMG (BVI) Limited and
                                          Kris Beighton of KPMG in the Cayman
                                          Islands, in their Capacity as Joint
                                          Liquidators and Foreign Representatives*

**<u>Exhibit A</u>**

**Proposed Recognition Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| KEYSTONE PRIVATE EQUITY | ) | Case No. 18-_____ (___) |
| INVESTMENTS LIMITED (in Liquidation)[1] | ) |  |
|  | ) |  |
|  | ) |  |
| Debtor in a Foreign Proceeding. | ) |  |
|  | ) |  |

_____

### ORDER OF RECOGNITION OF A FOREIGN MAIN PROCEEDING AND CHAPTER 15 RELIEF PURSUANT TO SECTIONS 1504, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Upon the Chapter 15 Petition[2] of Russell Crumpler of KPMG (BVI) Limited and Kris Beighton of KPMG in the Cayman Islands, in their capacity as Liquidators and as Foreign Representatives of the Debtor in the BVI Proceeding before the BVI Court, requesting entry of an order (this "Recognition Order") after notice and a hearing granting recognition of the BVI Proceeding as a foreign main proceeding under Section 1517 of the Bankruptcy Code and such other and further relief as the Court deems just and proper; and upon consideration of the Crumpler Declaration and all documents attached thereto; and the Court having jurisdiction to consider the Chapter 15 Petition pursuant to 28 U.S.C. §§ 157 and 1334; and the venue of this case and the Chapter 15 Petition in this district being proper pursuant to 28 U.S.C. § 1410; and consideration of the Chapter 15 Petition and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P); and it appearing that notice of the Chapter 15 Petition has been given as set forth in the Chapter 15 Petition and that such notice is adequate and no other or

---

[1] Keystone Private Equity Investments Limited (in Liquidation)'s service address is: KPMG (BVI) Limited, 3rd Floor, Banco Popular Building, P.O. Box 4467, Road Town, Tortola, British Virgin Islands, VG 1110, Attn: Russell Crumpler.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Chapter 15 Petition.

further notice need be given; and the Court having scheduled a hearing for November __, 2018 to consider the Foreign Representatives' request for the relief set forth in the proposed Recognition Order (the "Recognition Hearing"); and no objections to the Chapter 15 Petition having been filed or being hereby overruled; and the Recognition Hearing having been held to consider the relief requested in the Chapter 15 Petition and upon the record of the Recognition Hearing and all of the proceedings before the Court; and the Court having found and determined that the relief sought in the Chapter 15 Petition is consistent with the purpose of Chapter 15 of the Bankruptcy Code and that the legal and factual bases set forth in the Chapter 15 Petition establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:[3]

1.      The Foreign Representatives qualify as "persons" within the meaning of Section 101(41) of the Bankruptcy Code and are the duly appointed "foreign representative" of the Debtor within the meaning of Section 101(24) of the Bankruptcy Code;

2.      The Chapter 15 Case was properly commenced pursuant to Sections 1504 and 1515 of the Bankruptcy Code;

3.      The Chapter 15 Petition meets the requirements of Section 1515 of the Bankruptcy Code;

4.      The BVI Proceeding is a "foreign proceeding" within the meaning of Section 101(23) of the Bankruptcy Code;

---

[3] The findings and conclusions set forth herein and in the record of the Recognition Hearing constitute the Court's findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

- 2 -

5.      The BVI Proceeding is entitled to recognition by the Court pursuant to Section 1517 of the Bankruptcy Code;

6.      The BVI Proceeding is pending in the BVI, which is the location of the Debtor's center of main interests, and as such, is a "foreign main proceeding" pursuant to Section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to Section 1517(b)(1) of the Bankruptcy Code;

7.      The Foreign Representatives are entitled to all the relief provided pursuant to Sections 1520 and 1521 of the Bankruptcy Code without limitation;

8.      The relief granted hereby is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, warranted pursuant to Section 1521 of the Bankruptcy Code and will not cause any hardship to any party in interest that is not outweighed by the benefits of granting relief; and

9.      The interest of the public will be served by the Court's granting of the relief requested by the Foreign Representatives.

**NOW THEREFORE, IT IS HEREBY ORDERED, THAT:**

10.     The Chapter 15 Petition is granted in its entirety.

11.     The BVI Proceeding is hereby recognized as a foreign main proceeding pursuant to Section 1517 of the Bankruptcy Code.

12.     All provisions of Sections 1520 and 1521 of the Bankruptcy Code apply in this Chapter 15 Case, including, without limitation, the following:

> A.      the protections of Section 362 of the Bankruptcy Code apply to the Debtor and its assets in the United States;
>
> B.      the Foreign Representatives are established as the representatives of the Debtor with full authority to administer the Debtor's assets and affairs in the United States;

- 3 -

C.      all persons and entities are enjoined from seizing, attaching and/or enforcing or executing liens or judgments against the Debtor's property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtor's assets or agreements in the United States without the express consent of the Foreign Representatives;

D.      all persons and entities are enjoined from commencing or continuing, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtor or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtor or its assets or proceeds thereof;

E.      the Foreign Representatives may seek the examination of witnesses, the taking of evidence or the delivery of information concerning the Debtor's assets, affairs, rights, obligations or liabilities;

F.      the Foreign Representatives are entrusted with the administration and realization of all of the Debtor's assets within the territorial jurisdiction of the United States; and

G.      Merrill Lynch is hereby directed to transfer the funds in the Merrill Lynch Account to the Debtor's Bank Accounts as instructed by the Foreign Representatives and the Foreign Representatives are hereby authorized to receive the funds in the Merrill Lynch Account to be used in the BVI Proceeding for the administration and distribution in the Debtor's BVI Proceeding in accordance with the Insolvency Act and any order from the BVI Court.

13.    The BVI Court's April 28 Order is hereby given full force and effect in the United States; provided that the April 28 Order shall cease to have full force and effect in the United States to the extent the April 28 Order is terminated or revoked by order of the BVI Court.

14.    Nothing herein shall enjoin a police or regulatory act of a governmental unit, including a criminal action or proceeding.

15.    The Chapter 15 Petition and the Crumpler Declaration and all documents attached thereto (the "Petition Documents") are available to parties-in-interest on the Bankruptcy Court's Electronic Case Filing System, which can be accessed from the Bankruptcy Court's

- 4 -

website at https://ecf.nysd.uscourts.gov or can be requested free of charge from Squire Patton

Boggs (US) LLP, 30 Rockefeller Plaza, New York, NY 10112, Attn.: Nava Hazan, Esq., counsel

to the Foreign Representatives.

16.      Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) the

Recognition Order shall be effective immediately and enforceable upon its entry; (b) the Foreign

Representatives are not subject to any stay in the implementation, enforcement or realization of

the relief granted in the Recognition Order; and (c) the Foreign Representatives are authorized

and empowered, and may in their discretion and without further delay, take any action and

perform any act necessary to implement and effectuate the terms of this Order.

17.      The Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or related to the Chapter 15 Petition or the implementation of the

Recognition Order, and any request for additional relief or any adversary proceeding brought in

and through this Chapter 15 Case that is properly commenced and within the jurisdiction of the

Court.

18.      The terms and conditions of the Recognition Order shall be immediately

effective and enforceable upon its entry.

Dated: _____, 2018            _____
         New York, New York                         United States Bankruptcy Judge